IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Maryland)

SHERON PURNELL                     *

     Plaintiff                       *

v.                                 *

ZACHARY CONVERSE, ET AL.           *

     Defendants                      *        Case No. 1:21-cv-03202-ADC

                                     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF SHERON PURNELL'S RESPONSE IN OPPOSITION TO DEFENDANTS ZACHARY CONVERSE AND SHANE MUSGRAVE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

     NOW COMES Plaintiff Sheron Purnell, by and through his undersigned counsel, who hereby opposes Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment. Plaintiff Purnell respectfully asserts that he has set forth sufficient factual allegations compelling a denial of the dispositive motion and states further:

**Table of Contents**

I.    **Introduction and Procedural History** ................................................................ 2

II.   **Standard of Review** ......................................................................................... 3

III.    **Argument** ....................................................................................................... 6

   A.    **The Defendants do not enjoy Eleventh Amendment Immunity as a matter of law.** 7

   B.    **Defendant's Converse and Musgrave Violated Plaintiff Sheron Purnell's Rights Under the Fourth Amendment.** ............................................................................. 12

      1.    **The validity of the initial traffic stop is disputed.** ................................. 12

      2.    **Defendant Converse Prolonged the Traffic-Stop and the Frisk was not Justified** 12

      3.    **Plaintiff Sheron Purnell was Unlawfully Seized Absent a Valid Warrant** ......... 16

      4.    **Defendants Converse and Musgrave Utilized Excessive Force** ........................... 18

**5.      The Defendants are not Entitled to Qualified Immunity in Their Personal Capacities** ...................................................................................................... 22

**C.      Plaintiff's Claims Under the Maryland Declaration of Rights Should Not be Dismissed** ............................................................................................................... 24

**D.      Defendants Converse and Musgrave are Not Entitled to Maryland Statutory Immunity** ..................................................................................................................... 25

**E.      Plaintiff's independent causes of action for the false arrest, false imprisonment, and battery are also viable.** ....................................................................................... 27

**IV.   Request for Discovery** ......................................................................................... 30

**V.   Conclusion** ............................................................................................................. 32

## I.   Introduction and Procedural History

This action was initiated on December 17, 2021. The Original Complaint included the following causes of action: Count I – Violation of Rights brought under 42 U.S.C. 1983; Count II – Battery; Count III – False Arrest; and Count IV – False Imprisonment; and Count V – Violation of Maryland Declaration of Rights. All of these claims concerned the events of December 21, 2018, wherein Plaintiff Purnell was stopped, detained, and tased by all of these Defendants Converse and Musgrave.

On April 11, 2022, Defendants Converse and Musgrave asserted their primary dispositive motion. (ECF 17) Three days later, Defendants Converse and Musgrave undertook efforts to supplement the motion with physical exhibits (ECF 19), and further supplemented the pleading. (ECF 20)

On May 19, 2022, Plaintiff requested leave of this Honorable Court to file his now controlling First Amended Complaint which included enhanced factual averments. (ECF 24) In conjunction with the request, Plaintiff Purnell filed an Opposition to Defendants' Motion to Dismiss for Failure to State a Claim or, in the alternative, for Summary Judgment. (ECF 27) This Court ultimately allowed Plaintiff Purnell leave to submit an amended pleading and denied

Defendants' pending dispositive motion as moot. (ECF 32) Plaintiff Purnell's First Amended Complaint was docketed on June 30, 2022. (ECF 33)

On August 15, 2022, Defendants Converse and Musgrave moved for the dismissal of the First Amended Complaint, and simultaneously asserted a motion for summary judgment. (ECF 36)  The pending dispositive motion, which includes appended factual evidence in support of the request for summary judgment, precedes an Answer and the initiation of discovery.

## II.  Standard of Review

Because dismissals under Rule 12 are "decision[s] on the pleadings", they are "granted sparingly and with caution." *See Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 511 F.2d 678, 680 (4th Cir. 1975) *rev'd* on other grounds, 425 U.S. 738, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (U.S.N.C. 1976). In ruling on a 12(b)(6) motion to dismiss, this Court must "accept the well-plead allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997). This Court must simultaneously "disregard [any and all] contrary allegations of the opposing party." *Gillespie v. Dimension Health Corp.,* 396 F. Supp 2d 636, 640 (D. Md. 2005) Following this analysis, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 450-46 (1957); *See also Flood v. New Hanover County*, 125 F. 3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F. 3d 213, 217-18 (4th Cir. 1994) ("to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the Plaintiff and accept those factual allegations as true.")).

Stated another way, "[d]ismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face." *Owens v. Baltimore City State's Attorney's Office*, 767 F. 3d 379, 396 (4th Cir. 2014); see also *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)) (a motion to dismiss for failure to state a claim for relief should not be granted if the complaint is plausible on its face.) A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678. A moving defendant maintains the burden of proving that a plaintiff's Complaint does not include sufficient factual averments to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 681; *See also Bing v. General Motors Acceptance Corp.*, 237 F. Supp. 911, 912 (E.S.S.C. 1965) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957) ("A complaint should not be dismissed…unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).  Extrinsic evidence is not germane to the Court's analysis because "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 524 U.S. 506, 511 (2002); see also  Fed. R. Civ. Pro. 12(d).

In circumstances such as those in the instant matter, wherein the named defendants have submitted extrinsic evidence in support of their request for dispositive relief, the motion is to be evaluated as a request for summary judgment. Rule 12(b)(6) provides that when

> matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. <u>All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.</u>

Fed. R. Civ. P. 12(d) (emphasis supplied); *see also Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). "In interpreting the requirements of this rule, [the Fourth Circuit Court of Appeals] has

held that the term 'reasonable opportunity' requires that all parties be given 'some indication by the court ... that it is treating the 12(b)(6) motion as a motion for summary judgment,' <u>with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery</u>." *Gay,* 761 F.2d at 177 (quoting *Johnson v. RAC Corp.,* 491 F.2d 510, 513 (4th Cir.1974) (internal citations omitted) (emphasis supplied); *See also* C. Wright & Miller, 5 *Federal Practice and Procedure* § 1366 (1969).

This Court's role under Rule 56 is limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Anderson Liberty v. Lobby, Inc.*, 477 U.S. 242, 249 (1986). In the context of this evaluation, the evidence of the non-moving party is to be believed as true, all doubts must be resolved against the moving party, all evidence must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *See, Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *see also Anderson Liberty*, 477 U.S. at 255. "In conducting this review, 'it is not [the Court's] job to weigh the evidence.'" *Meyers v. Baltimore County, Md*., 713 F. 3d 723, 730 (4th Cir. 2013) (quoting *Gray v. Spillman*, 925 F. 2d 90, 95 (4th Cir. 1991)). "Summary Judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson Liberty*, 477 U.S. at 248. ""The principal function of the motion for summary judgment is to show that one or more of the essential elements of a claim or defense ... is not in doubt and that, as a result, judgment can be rendered as a matter of law." Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745, 747 (1974)

III.   **Argument**

Plaintiff's First Amended Complaint is sufficient to overcome Defendants' request for dismissal. A pleading setting forth a claim under 42 U.S.C. § 1983 is not subject to any enhanced specificity standard. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (168) (1993); *see also Campodonico v. S.C. Dep't of Corr.*, slip op. 2:17-CV-3034-SAL, 2020 WL 2079099 (D.S.C. Apr. 30, 2020). The *Leatherman* Court explained:

> In *Conley v. Gibson*, 355 U.S. 41, 78 (1957), we said in effect that the Rule meant what it said:
>
>> "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests…"
>
> Rule 9(b) does impose a particularity requirement in two specific instances…but do not include among the enumerated actions any reference to complaints alleging…liability under § 1983. *Expressio unius est exclusio alterius.*

*Leatherman*, 507 U.S. at 168.  Plaintiff has set forth sufficient factual averments to support reasonable inferences that the named defendant officers violated his constitutional rights while working in their official capacity for, or on behalf of, Worcester County. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1965 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" … "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

The First Amended Complaint includes the following relevant factual averments:

- That all times relevant to the asserted causes of action Defendants Converse and Musgrave were deputized members of the Worcester Criminal Enforcement Team, were implementing Worcester County Policy, and were under the control of Worcester County.  ECF 33 ¶¶ 6-10

- That Defendant Converse, in his capacity as a deputized member or the Criminal Enforcement Team, had received a tip regarding Plaintiff Purnell and was therefore "familiar with Sheron Purnell." ECF 33 ¶

- That, on December 21, 2018, Defendant Converse initiated a traffic stop of a 2008 Honda Accord operated by Plaintiff Purnell. ECF 33 ¶¶ 11-16

- That Plaintiff Purnell voluntarily stopped his vehicle, and provided his license and a valid copy of his vehicle registration to Defendant Converse, who was able to conduct a negative record check using the same. ECF 33 ¶¶ 15-23

- That Plaintiff Purnell was ordered out of his vehicle after the basis for the traffic stop had been concluded, and in the absence of any probable cause. ECF 33 ¶¶ 18-23, 25-30

- That Plaintiff Purnell was subjected to a thorough physical search during which he raised his hands; his torso and limbs were frisked; and his pockets were patted down and subject to tactile inspection. No narcotics, weapons or criminal implement of any kind were located on Plaintiff Purnell's person. ECF 33 ¶ 27

- Neither Defendant Converse nor State Trooper Orndorff observed any narcotics and/or evidence of narcotics in or around Plaintiff Purnell's 2008 Honda Accord; they nevertheless effected a continuing physical detention in the absence of probable cause. ECF 33 ¶¶ 31-38

- That Plaintiff Purnell was subjected to gratuitous, unwarranted and excessive force and, among other things, tased while he was being held down on the ground. ECF 33 ¶¶ 39-40

- That no narcotics or contraband were found during am ensuing search of Plaintiff Purnell's person and vehicle. ECF 33 ¶¶ 41-42

- That on January 10, 2019, Defendant Converse falsified an Application for Statement of Charges that prompted a criminal prosecution which was later dismissed. ECF 33 ¶¶ 41-42

**A. The Defendants do not enjoy Eleventh Amendment Immunity as a matter of law.**

Among their substantive arguments, Defendants maintain that they should  be afforded the

benefit of  Eleventh Amendment immunity. In light of the Plaintiff's allegation that the named

defendants were working as deputized members of the Worcester County Criminal Enforcement Team (CET), however, this assertion does not support a dismissal of Plaintiff's First Amended Complaint. The request that this matter be decided upon submitted affidavits, as summary judgment, is likewise premature.

While sheriffs are generally considered state employees under Maryland law, *see Rucker v. Harford County*, 316 Md. 275, 289, 558 A.2d 399 (1989), state courts repeatedly note that the analysis might be different "for the purposes of the Eleventh Amendment or 42 U.S.C. § 1983 [which] are federal law issues." *Id.* at 280-81, 558 A.2d 399; *see also Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 670 n.5, 541 A.2d 1303 (1988); *Ritchie v. Donnelly*, 324 Md. 344, 357, 597 A.2d 432, 438 (1991) (stating that "[w]hile, under Maryland law, a sheriff is a state official, the state law classification is not dispositive for purposes of § 1983.") "Sheriffs in Maryland may be considered either state or, in limited circumstances, county officials." *Santos v. Frederick County Board of Commissioners*, 346 F. Supp.3d 785, 792 (2018).

The necessary analysis is one of circumstance and sometimes geography. *See, e.g., Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001) (sheriff is a local official in California); *Mercado v. Dart*, 604 F.3d 360 (7th Cir. 2010) (Illinois sheriff is not a state officer); *compare Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) (Vermont sheriff is a state officer). In *McMillian*, the Supreme Court declared that "since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." *McMillian v. Monroe Cty.*, 520 U.S. at 795 (1997). Any determination as to whether the defendants were operating pursuant to county or state policymaking authority depends on "a [the] particular area, or on a particular issue." *McMillian,* 520 U.S. at 785.

The Fourth Circuit has instructed district courts how to perform this analysis. In *Dotson v. Chester*, for example, the Plaintiffs brought suit against county commissioners and the sheriff in Dorcester County, Maryland, based on alleged civil rights violations in the management and operation of the county jail. 937 F.2d 920 (4th Cir. 1991). At issue in *Dotson* was whether the county or the state was liable for any judgment rendered against the sheriff. The court concluded that the answer depended on the facts: "[c]ounty liability for the Sheriff's operation of the County Jail depends on whether the Sheriff had final policymaking authority for the County over the County jail." *Id.* at 924. Put another way, when the sheriff acted as the final policymaker on an issue of local or county policy, the county—and the county commissioners as the governing board of the county—would be liable, whereas if the sheriff acted as a state policymaker, recovery for *Monell* liability would be limited to prospective relief. *See id.* at 924 ("The *Praprotnik* test indicates liability relies more on final policymaking authority than on the technical characterization of an official as a state or county employee.") The court in *Dotson* had no trouble concluding that, when operating the county jail, the sheriff was the final policymaker for the county and thus subject to *Monell* liability. 937 F.2d at 932 ("[W]e conclude that both state and local law point to the Sheriff as the final policymaker for the County when operating the County Jail, and hold that the County is properly responsible. . . ."). This functional analysis remains good law. *Santos v. Frederick Cty. Bd. Of Comm'rs*, 725 F.3d 451, 470 (4th Cir. 2013) ("[O]n remand, the district court should determine whether the deputies' unconstitutional actions are attributable to an official policy or custom of the county or the actions of a final county policymaker.").

By way of their own affidavits, and also the assertions set forth in Plaintiff's First Amended Complaint, Defendants Converse and Musgrave were members of the CET. The CET

Unit is comprised of investigators from the Ocean City Police Department, Pocomoke City Police Department, the Maryland State Police, Office of Homeland Security, and the Worcester County Sheriff's Office. ECF  33 ¶ 6 At all times relevant to this action, the CET functioned as a "stand-alone narcotics investigatory team, with delegated authority from the County Sheriff's office, performed its own investigations, and set its own priorities based upon County-specific narcotics issues, and official policies loosely under the control of both Worcester County and the Worcester County Sheriff's Office, but no other government unit." ECF  33 ¶ 7.

The CET was expressly formed to tackle a county drug problem: its goal is "to reduce drug trafficking activities within Worcester County." Attached Exhibit No. 1, *Minutes of the County Commissioners of Worcester County, Maryland* (June 6, 2015) at 123, (https://www.co.worcester.md.us/sites/default/files/meetings/Commissioner%20Meeting/minutes/2016/Overall%202015.pdf.)  The CET was constituted by partnerships with municipal police departments either on specific projects or by detailing police officers from municipalities to the CET.  *Id.* The cooperation agreements were on occasion incorporated into formal memoranda of understanding ("MOU") with local police departments subject to approved by the Worcester County Commissioners. *Id.* The State of Maryland was not a party to these MOUs, only the county and the other police forces that staff the CET participated as signatories. *Id.*  Moreover, the Worcester County Code contains an explicit provision that any mutual aid agreement for law enforcement activities must be approved by the Sheriff's Office and executed by the County, and this provision creates an inference that the CET itself was approved by the County. WORCESTER CTY., MD. CODE, PUBLIC SAFETY § 7-104 (2005). In short, although the members of the CET are provided by state, county, and municipal government, the CET appears to be under county control.

It is for these reasons, that Plaintiff expressly averred that: "CET supervisors were delegated final policymaking authority to determine the duties and priorities of its members, set personnel policies, set investigation priorities, and supervision of the activities of its members from the municipalities of Worcester County, Pocomoke City, Ocean City, and Ocean Pine." ECF 33 ¶ 7. In the context of the instant litigation, the operation of the CET is, for all ostensible purposes, analogous to the county jail issue addressed in *Dotson*. The CET was created and run by the County and the County Sheriff's Office and its duties were not state-wide, rather they were confined to the boundaries of the county. ECF 33 ¶ 6. It is for this reason that the deputized members of the CET should be deemed county employees.

Even at this early stage of this litigation, the factual record demonstrates that the Defendant Converse had become 'familiar with Sheron Purnell" through his work with the CET. ECF 33, First Amended Complaint ¶ 7; ECF 36, Second Dispositive Motion, pg. 3. For purposes of the instant litigation Defendant Converse has asserted that, in his capacity as a deputized member of the CET, he "received a tip from an anonymous source that Mr. Purnell was … actively selling" narcotics in Worcester County, Maryland. ECF 33 ¶10 and ECF 36, pg. 3. The veracity of this alleged anonymous tip is disputed. However, it is understood that Defendant Converse, and perhaps Defendant Musgrave, were acting pursuant to a profile compiled by the CET and in furtherance of a CET investigation at all times relevant to this action. ECF 33 ¶ 10. *See McMillian*, 520 U.S. at 785-86 ("[W]e are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action [but] whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity.").

The Defendants ignore any discussion about specific functions, and place primary emphasis on the fact that Maryland state courts have held that a county sheriff is a designated state constitutional official for state-law claims. Yet those state-law cases do not control county liability for purposes of 1983: "with regard to federal law liability under 42 U.S.C. § 1983, the state law classification . . . would not be decisive." *Clea v. City of Baltimore*, 541 A.2d 1303, 1306–1307 n. 5 (Md. 1988). In fact, "Maryland state cases that address a sheriff's employment status go out of their way to forestall any conclusion about a sheriff's status for Section 1983 or Eleventh Amendment purposes." *Santos v. Frederick County Board of Commissioners*, 346 F. Supp.3d 785, 792 (2018).  The status of the defendant officers is entwined in a question of fact that cannot be answered at present.

**B.  Defendant's Converse and Musgrave Violated Plaintiff Sheron Purnell's Rights Under the Fourth Amendment.**

**1.  The validity of the initial traffic stop is disputed.**

Plaintiff Purnell has averred in the First Amended Complaint and now maintains that he was traveling within the speed limit prior to the time of the subject stop. (ECF 33, ¶ 13; Exhibit 2, Affidavit of Sheron Purnell ¶3) Detective Converse asserts, to the contrary, that he observed Purnell "exceeding the posted 50m.p.h. speed limit." (ECF 36-4 ¶4) Whether the stop was valid at initiation is accordingly in dispute and will require a finding on of fact that cannot be rendered at this time. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 271 (1986) ("[I]nferences as to the credibility of witnesses" is the prerogative of the fact finder.)  *See also Meyers v. Baltimore County, Md.*, 713 F. 3d 723, 730 (4th Cir. 2013) (quoting *Gray v. Spillman*, 925 F. 2d 90, 95 (4th Cir. 1991)) ("[I]t is not [the Court's] job to weigh the evidence.'")

**2.  Defendant Converse Prolonged the Traffic-Stop and the Frisk was not Justified**

12

Even assuming, *arguendo,* that the stop was lawful, the validity of the ensuing detention must be evaluated by a fact finder. Police officers are under a legal obligation to "carefully tailor" the duration of a traffic stop to "its underlying justification." *See Florida v. Royer*, 460 U.S. 491, 500 (1983). A traffic stop may not continue "longer than is necessary to effectuate the purpose of the stop," unless the officer develops reasonable, articulable suspicion of additional criminal conduct that requires further investigation. *Id*. Activities such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance" are within the acceptable scope and duration of a traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 355, (2015). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. At 355. " Brief questioning that is unrelated to the traffic infraction is likewise acceptable, as long as such questioning does not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, (2009). However, in *Rodriguez*, the Supreme Court clearly held that "[a]uthority for the seizure ends when tasks tied to the traffic infraction are–or reasonably should have been–completed." 575 U.S. at 354. For that reason, even brief unrelated questioning may be unlawful, if it occurs after the point at which the tasks underlying the traffic stop are completed and while the Defendant is still seized.

The Fourth Circuit Court of Appeals, in its most recent pronouncements on this subject, distinguished between unrelated questioning that occurs "during the course of a traffic stop," and questioning that occurs after the point at which the "tasks tied to the traffic infraction are ... completed." *United States v. Bowman*, 884 F.3d 200, 210 (4th Cir. 2018) (quoting *Rodriguez*, 575 U.S. at 354). The Court explained that once the tasks related to the traffic infraction were concluded the stop becomes an unlawful seizure if it is extended for even a "de minimis" amount

of time. *Id.* at 210; *See also Florida v. Bostick*, 501 U.S. 429, 434 (1991) (In determining whether unrelated post-stop questioning was consensual, the court must decide whether a reasonable person would have felt free to leave.); *compare Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) (rejecting a per se rule that an officer must always inform the defendant he or she is free to go in order for consent to be voluntary).

In the instant case, Plaintiff Purnell has expressly averred in the now controlling First Amended Complaint that the purpose of the traffic stop was complete before he was ordered out of his vehicle and subject to the described use of force. These averments are further supported by Mr. Purnell's appended Affidavit. For purpose of evaluating the issues now before the Court, Plaintiff has properly alleged that (1) he provided Defendant Converse with his license and a valid copy of his automobile registration (ECF 33 ¶17; Exhibit 2, Affidavit of Sheron Purnell ¶ 5); (2)  Defendant Converse did not observe any narcotics on Plaintiff Purnell's person, nor did he observe any indication that Plaintiff Purnell might be in possession of any narcotics. (ECF 33 ¶ 18); (3) Defendant Converse returned to his patrol vehicle where he "began to process the information necessary to write a traffic violation warning to Mr. Purnell for speeding." (ECF 33¶ 19 and ECF 17-4, ¶7); (4)  at approximately 12:51 pm,  Defendant Converse entered Plaintiff Purnell's "license information [and vehicle information] into [the] Maryland Electronic Ticket (E-Tix) database" using the computer terminal within his patrol vehicle. (ECF 33 ¶ 21 and EFC 36-4, ¶7); and (6) Defendant Converse had occasion to request and confirm that there were no open warrants concerning Plaintiff Purnell. (ECF 33 ¶ 22 and ECF 36-3, Dash Camera Video Footage) In sum, Defendant Converse had all of the information necessary to complete the traffic stop and issue either a speeding ticket or warning for speeding before Plaintiff Purnell was ordered out of his vehicle. (ECF 33¶ 23)  See *United States v. Guerrero–Espinoza,* 462 F.3d

1302, 1310 (10th Cir. 2006) (finding that the defendant's decision to answer the officer's questions did not constitute consent to prolong the stop, but rather was a product of his unlawful detention).

Plaintiff Purnell maintains that the stop was improperly continued after the initial purpose of the stop, addressing a speeding violation, had been completed. This assertion is, ironically, supported by the record evidence appended to Defendants' dispositive motion. The dash camera footage from Defendant Converse's vehicle, which finds its way before this Court as an attachment to the pending motion, shows Defendant Converse retaining Plaintiff's license and registration after he received confirmation that Plaintiff Purnell's license was valid and he received radio conformation that there was no open warrant. (ECF 36-3, Dash Camera Video Footage) In the same video footage, Defendant Converse can be heard telling Troper Orndorff that he was "familiar with [Plaintiff Purnell" and surmised that he was traveling from Delaware despite Purnell's report that he had been in Ocean City. (*Id*.) The recording of the scene also shows that a K-9 unit requested by Defendant Converse was never utilize or even removed from its vehicle. (*Id*.) Defendant Converse nevertheless directed Orndorff to "give it a shot" after which time Plaintiff Purnell was ordered out of the vehicle.  (ECF 33¶ 23 and ECF 36-3, Dash Camera Video Footage) Plaintiff properly maintains that he did not believe that he was free to leave the area and was under arrest at that point in time. (Exhibit 2, Affidavit of Sheron Purnell, ¶7); *See e.g. United States v. LeCraft*, 645 F. App'x 252, 255 (4th Cir. 2016) (Factors that are relevant to this inquiry include whether the officer handed back the driver's license and registration and whether the officer told the driver he was free to go.)

At approximately 1:00 pm on the date of the subject occurrence, Defendant Converse exited his police vehicle and approached Plaintiff Sheron Purnell. (ECF 33 ¶ 30, and ECF 36-3,

Dash Camera Video Footage) At that point, neither Defendant Converse nor Orndorff had observed any narcotics and/or evidence of narcotics in or around Plaintiff Purnell's 2008 Honda Accord; Defendant Converse still had all the information in hand necessary to generate a warning concerning Plaintiff Purnell's alleged act of speeding; Defendant Converse had verified that no open warrants were outstanding for Plaintiff Purnell; and the thorough search of Plaintiff Purnell's person had not produced any narcotics, weapons or indicia of a criminal happening. (ECF 33 ¶ 31, and ECF 36-3, Dash Camera Video Footage) There was accordingly no legal justification and/or grounds to continue the ongoing detention and arrest of Plaintiff Purnell. (ECF 33 ¶ 31, and ECF 36-3, Dash Camera Video Footage) Nevertheless, Defendant Converse continued the arrest and detention of Plaintiff Purnell against his will. (ECF 33 ¶ 32, and ECF 36-3, Dash Camera Video Footage)

When viewing the facts in a light most favorable to the Plaintiff, a reasonable jury can conclude that Defendant's continued detention of Plaintiff Purnell exceeded the time "necessary to effectuate the purpose of the stop." Additionally, the facts in the record as it now exists support a reasonable in inference that the named defendants lacked reasonable, articulable suspicion to continue the detention. Therefore, Plaintiff's Fourth Amendment seizure claim should not be dismissed or summarily decided at this stage of the litigation.

### 3. Plaintiff Sheron Purnell was Unlawfully Seized Absent a Valid Warrant

The Fourth Amendment protects "[t]he rights of the people to be secure in their persons….against unreasonable…seizures." U.S. Const. amend. IV. "This guarantee does not extend to all police-citizen encounters. Rather, as the Supreme Court has instructed, 'only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'" *U.S. v. Jones*, 678 F.3d 293, 299 (4th

16

Cir. 2012) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). "As a general matter, law enforcement officers do not effectuate a detention or seizure 'merely by approaching individuals on the street or other public places and putting questions to them.'" *Jones*, 678 F. 3d at 299 (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Jones*, 678 F.3d at 299 (quoting *Florida v. Bostick*, 501 U.S. 429 (1991).

In resolving this question, the Fourth Circuit has followed the standard set forth in *United States v. Mendenhall*, 446 U.S. 544 (1980) (plurality op.), "asking 'whether in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Jones*, 678 F. 3d at 299 (quoting *United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989)).

> A court considers a number of factors in determining whether an offer's conduct would convey to a reasonable person that he is not free to leave. These include but are not limited to, the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of "illegal activity rather than treating the encounter as 'routine' in nature."

*Gray*, 883 F.2d at 322-23

Approximately ten minutes after Plaintiff Purnell produced his license and registration to Defendant Converse, Plaintiff Purnell was ordered out of his vehicle. (ECF 33, ¶24-26; Exhibit 2, Affidavit of Sheron Purnell ¶ 7) Plaintiff properly maintains that he did not believe that he was free to leave the area and was under arrest at that point in time. (Exhibit 2, Affidavit of Sheron

17

Purnell, ¶7) Further, it is at this point that the named Defendants escalated the encounter to a compulsory search and seizure under the Fourth Amendment. (ECF 33 ¶27)

Defendants do not contend that they had a valid warrant for Plaintiff Purnell's arrest at the time of Plaintiff's traffic stop. By Defendants own admission, the Application of Statement of Charges which supported the issuance of an arrest warrant was not completed until January 10, 2019. When viewing the facts in a light most favorable to the Plaintiff, a reasonable jury can conclude that Defendant's seized and/or arrested Plaintiff without probable cause and in the absence of a valid arrest warrant. This again is not an issue to be decided through a dispositive motion.

### 4. Defendants Converse and Musgrave Utilized Excessive Force

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996); see also *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)*; Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d (1978). Moreover, the Fourth Amendment's prohibition against unreasonable seizures protects against the use of excessive force in arrests that are supported by probable cause. *See Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.CT. 1694, 85 L.Ed. 2d 1 (1985) (Court flatly rejected the suggestion that the Fourth Amendment's reasonableness requirement is satisfied so long as the seizure itself is supported by probable cause, holding that the reasonableness of a seizure depends not only on when it was made but also on how it was carried out); *See also Graham v. Connor*, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) (Claims that law enforcement officers used excessive force when making an arrest "should be analyzed under the Fourth Amendment."); *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir. 1970) (Fourth

18

Amendment provides constitutional protection against use of excessive force during arrest that is vindicable through § 1983). In determining whether force was reasonable, a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396; *see also Henry v. Purnell*, 652 F.3d 524, 531 (4ᵗʰ Cir. 2011) ("Whether an officer has used excessive force is analyzed under a standard of objective reasonableness.")

An evaluation of reasonableness in the context of an excessive force claim requires a consideration of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The "inquiry into the reasonableness of the force also requires [a Court] to 'consider the facts <u>at the moment that the challenged force was employed</u>' 'with an eye toward the proportionality of the force in light of all the circumstances.'" *Yates v. Terry*, 817 F.3d 877, 885 (4ᵗʰ Cir. 2016) (emphasis supplied) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)); *see also Waterman v. Batton*, 393 F.3d 471, 481 (2005) (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4ᵗʰ Cir. 1996) ("It is well established in this circuit that the reasonableness of an officer's actions is determined based on the information possessed by the officer at the moment that force is employed.") Force that is justified at the beginning of an encounter my no longer be reasonable "even seconds later if the justification for the initial force has been eliminated." *Waterman*, 393 at 481.

Defendants contend that Plaintiff Purnell was "clearly" a threat to officers and potentially a threat to others. This argument is inconsistent with the pleadings and the evidence presented by Defendants. Immediately after being stationed at the back of his vehicle, Plaintiff Purnell was

19

cooperative and he was frisked. (ECF 33, ¶27; Exhibit 2, Affidavit of Sheron Purnell ¶9; ECF 36-4, Affidavit of Zachary Converse ¶8; ECF 36-5, Affidavit of Dana Orndorff ¶6) Defendants have not advanced any record evidence indicating, or even tending to suggest, that this pat down yielded weapons. Plaintiff Purnell maintains that he was not in possession of a weapons and/or illegal items at the time of the subject occurrence. (Exhibit 2, Affidavit of Sheron Purnell, ¶ 9) There is a accordingly a dispute of fact that exists in this case as to whether Plaintiff Purnell reasonably may have been perceived as "a threat to the safety of himself, Defendants Converse and Musgrave, Maryland State Trooper Orndorff, or any other person present in the vicinity." (ECF 33, ¶ 51; Exhibit 2, Affidavit of Sheron Purnell ¶9)

Moreover, Plaintiff Purnell was visibly compliant during the course of his initial encounter with Defendants Converse and Musgrave and Corporal Dana Orndorff. (ECF 33, ¶17 and 26-27; Attached Exhibit 2, Affidavit of Sheron Purnell, ¶5 and 14-15) There is no record material showing or tending to show that he resisted or otherwise acted to assault the Defendants before he was forcibly taken to the ground. (ECF 33 ¶50; Exhibit 2, Affidavit of Sheron Purnell ¶15) Plaintiff Purnell further denies the Defendants allegation that he grabbed Corporal Dana Orndorff's hand and/or bent his thumb backwards. (Exhibit 2, Affidavit of Sheron Purnell, ¶ 13) Plaintiff also denies that he possessed a baggie containing a white powdery substance and/or attempted to conceal and/or swallow the same. (Exhibit 2, Affidavit of Sheron Purnell, ¶ 11-12)

Given the above-described circumstances, the Defendant's actions of grabbing Plaintiff's "left arm and twists his arm behind his back, force[ing]Plaintiff Purnell on the rear portion of Plaintiff's vehicle…tak[ing] Plaintiff Sheron Purnell to his knees on the ground… taking Plaintiff Sheron Purnell to the ground…placing their knees on Plaintiff's back while Plaintiff is lying face down on the ground….[and] deploying his Taser into Plaintiff Sheron Purnell's lower back" was

unreasonable and excessive. (ECF 33, ¶34-39)

Furthermore, the dash camera footage submitted with the dispositive motion is not probative of a singular conclusion that the force at issue in this case was reasonable. The supplied footage does not include any depiction of actions and/or conduct by Plaintiff Purnell that supports the Defendants contention he resisted arrest and/or attempting to flee. (ECF 36-3, Dash Camera Video Footage) Rather, the footage depicts Defendants Converse and Musgrave forcibly holding Plaintiff Purnell down to the ground by placing their knees on his back while he was lying face down on the ground. (ECF 36-3, Dash Camera Video Footage) Plaintiff Purnell is depicted to be effectively restrained with the body weight of three adult males on his back, unarmed, and not resisting, during the time period when Defendant Musgrave tased him three times.  (ECF 36-3, Dash Camera Video Footage) It is at this time, that (ECF 36-3, Dash Camera Video Footage)

Based on the foregoing facts and circumstances, it may be properly inferred that the named Defendants directed excessive force at Plaintiff Purnell without legal justification, proper cause or lawful authority. *See e.g. Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016) ("The objective facts, when viewed in the light most favorable to Yates as we must do at this point in the proceedings, show that he was neither a dangerous felon a flight risk nor an immediate threat to Terry or anyone else," therefore the use of a taser constituted excessive force); *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003) (courts have consistently held that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner…"); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (law was sufficiently clear to inform reasonable officer "that it was unlawful to catering nonviolent, suspected misdemeanant who was not fleeing resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's command was to disobey two

21

orders to end her phone call to 911 operator"); *Morelli v. Webster*, 552 F.3d 12 (1st Cir. 2009) (clearly unlawful to use force that resulted in torn rotator cuff a woman who was unarmed, nonviolent, and suspected of theft of $20.00). Courts have consistently held that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner…" *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003).

Once again Plaintiff Purnell has made a prima facie showing of a claim that is subject to a dispute of fact.

### 5. The Defendants are not Entitled to Qualified Immunity in Their Personal Capacities

The factual averments contained in Plaintiff's Complaint and the reasonable inferences that must be drawn therefrom are sufficient to overcome Defendants' argument that they are shielded by qualified immunity. *See e.g. Brown v. Elliott*, 876 F.3d 637, 641–42 (4th Cir. 2017) ("[W]hen resolving the issue of qualified immunity at summary judgment, a court must ascertain the circumstances of the case by crediting the plaintiff's evidence and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Waterman v. Batton*, 393 F.3d 471, 473 (4th Cir. 2005) ("In reviewing the denial of summary judgment based on qualified immunity, we accept as true the facts that the district court concluded may be reasonably inferred from the record when viewed in the light most favorable to the plaintiff.").

Generally, government officials performing discretionary functions are only entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For purposes of analyzing a qualified immunity defense, this Honorable Court's first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct. *See*

22

*Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir.1996). This Court must then decide whether the

facts, viewed in the light most favorable to the plaintiff, demonstrate a violation of that right. *See*

*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Finally, this Court

must finally decide whether, at the time of the claimed violation, the right alleged to be violated

was clearly established—meaning that "a reasonable official would understand that what he is

doing violates" the right in question. *Id.* at 202, 121 S.Ct. 2151 (internal quotation marks

omitted); *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed. 2d 1149

(2011) ("We do not require a case directly on point, but existing precedent must have placed the

statutory or constitutional question beyond debate.")

  As discussed *supra*, Plaintiff's Complaint and any reasonable inferences drawn therefrom

state a prima facie case that Plaintiff's Fourth Amendment rights were violated. At the time of

the subject occurrence, it was clearly established in a "particularized" sense that Defendants were

violating Plaintiff Purnell's Fourth Amendment Rights.

> A police officer's unprovoked tackling of a nonthreatening,
> nonresisting misdemeanor suspect to effect his arrest violates the
> Fourth Amendment. *See Rowland,* 41 F.3d [167] at 172–74 [(4th
> Cir. 1994)] (rejecting qualified immunity where officer,
> unprovoked, attacked nonfleeing, nondangerous misdemeanor
> suspect to subdue him); *see also Smith,* 781 F.3d at 104–06
> (finding the same clearly established in 2006); *accord Blankenhorn
> v. City of Orange,* 485 F.3d 463, 481 (9th Cir.2007) (finding it
> "clearly established" that tackling a "relatively calm," nonresistant
> misdemeanor suspect, without first attempting a less violent means
> of arrest, violates the suspect's Fourth Amendment rights);
> *Goodson v. City of Corpus Christi,* 202 F.3d 730, 733–34, 740 (5th
> Cir.2000) (rejecting qualified immunity when officers tackled
> nonfleeing citizen); *Landis v. Baker,* 297 Fed.Appx. 453, 464 (6th
> Cir.2008) (finding it clearly established that "forcefully tackling
> and pinning down a suspect who was unarmed would constitute
> excessive force").

*Barfield v. Kershaw County Sheriff's Office*, 638 Fed. Appx. 196, 203–04 (4th Cir. 2016). *See also Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016) ("The objective facts, when viewed in the light most favorable to Yates as we must do at this point in the proceedings, show that he was neither a dangerous felon a flight risk nor an immediate threat to Terry or anyone else," therefore the use of a taser constituted excessive force).As in *Rowland,* Defendants Converse and Musgrave "took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack." *Smith,* 781 F.3d at 104. This objectively unreasonable application of force by Defendants, coupled with the weaknesses of the *Graham* factors discussed *supra* puts the "constitutional question beyond debate." *Smith*, 781 at 100 (quoting *al-Kidd*, 131 S.Ct. at 2083).

      Alternatively, there are genuine disputes of material fact sufficient to overcome the granting of summary judgment with respect to the immunity issue.

### C. Plaintiff's Claims Under the Maryland Declaration of Rights Should Not be Dismissed

      Plaintiff Purnell's claim that his Maryland State constitutional rights were violated is also not subject to dismissal at this time. The Maryland Declaration of Rights is the rule of law which secures the liberty interests of citizens residing in this State and mirrors the federal Constitution. *See Beeman v. Department of Health and Mental Hygiene*, 107 Md. App. 122 (1995) ("state constitutional rights are... [generally] considered in *pari materia* with their federal counterparts."); See also *Dua v. Comcast* Cable, 370 Md. 604, 621 (2002) (… decisions applying one provision are persuasive authority in cases involving the other…") There are some critical distinctions, however, between Section 1983 and claims brought under the Maryland Declaration of Rights. The critical distinction in the context of this opposition in the recognition that, "constitutional provisions like Article 24 or 26 or the Maryland Declaration of Rights, or Article

III, § 40, of the Maryland Constitution, are specifically designed to protect citizens against certain types of unlawful acts by government officials" and accordingly there is no entitlement to qualified immunity. *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 684-85 (1988). As such, there is no basis to dismiss such claims at this juncture.

### D. Defendants Converse and Musgrave are Not Entitled to Maryland Statutory Immunity

Defendants are not otherwise immune from the state law claims asserted by Plaintiff Purnell. In *DiPino v. Davis*, 354 Md. 18, 49, 729 A.2d 354 (1999), Judge Wilner, writing on behalf of the Court of Appeals, explained that "a police officer, who might otherwise have the benefit of this immunity, does not enjoy it if the officer commits an intentional tort or acts with malice." 354 Md. At 49 (quoting *Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983)); *See also Lovelace v. Anderson*, 366 Md. 690, 705, 785 A.2d 726 (2001) (".... the defense of public immunity generally applies only to negligent acts."); *Parker v. State*, 337 Md. 271, 285, 653 A.2d 436 (1995) (contrasting absolute judicial immunity and qualified public immunity and stating that the later constitutes a defense only to negligence actions); *Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983) (police officer held not to have qualified immunity relative to claims of false arrest, intentional infliction of emotional distress and false imprisonment);  *James v. Prince George's County*, 288 Md. 315, 323-24, 148 A.2d 1173 (1980) ("once it is established that the individual is a public official and that the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches... in the absence of malice...."). In *Robinson v. Board of County Commissioners for Prince George's County*, 262 Md. 342 (1971), the Maryland Court of Appeals held that an allegation that an arresting officer acted without just cause and without probable cause was sufficient to state a cause of action and sufficient to avoid immunity raised

on demurrer and explained: "We cannot think of any reason, why a public official should not be held responsible for his malicious actions even though he claims they were done within the scope of his discretionary authority." *Robinson,* 262 Md. at 348, 278 A.2d 71. The *Robinson* Court relied on *Duncan v. Koustenis,* 260 Md. at 104, 271 A.2d 547, *Eliason v. Funk,* 233 Md. 351, 356, 196 A.2d 887 (1964), *Carr v. Watkins,* 227 Md. 578, 585, 177 A.2d 841 (1962), *Carder v. Steiner,* 225 Md. at 274, 170 A.2d 220, and *State use of Clark v. Ferling,* 220 Md. 109, 114, 151 A.2d 137 (1959). In all of those cases, the Court stated the general proposition that immunity is not available when a public official acted maliciously.

By way of the controlling First Amended Complaint, it has been averred that Defendants' act of taking Plaintiff to the ground and deploying a Taser into Plaintiff's lower back and leg was reckless and/or malicious. "Actual malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.' " *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014) (quoting *Town of Port Deposit v. Petetit,* 113 Md. App. 401, 416  (1997)); *see also Hines v. French*, 157 Md. App. 536, 562-63 (2004) (characterizing this definition as the standard for "malice" for the purposes of public official immunity). Gross negligence, on the other hand, is

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Cooper,* 443 Md. at 708 *(quoting Barbre v. Pope,* 402 Md. 157, 187(2007)).

Whether one acted with malice or gross negligence is typically a fact-dependent determination. *See Id.* at 708-09, 118; *Artis v. Cyphers*, 100 Md. App. 633, 653-54 (1994). Inferences of personal animus or malice that can also be drawn from Plaintiff's assertions and supporting factual evidence in this case. *See e.g. Nelson v. Kenny*, 121 Md. App. 482, 494-95, 710 A.2d 345 (1998) (inference of malice raised by evidence that reasonably could be interpreted to suggest that the decision to arrest was motivated or unduly influenced by the arresting officer's racial hostility and animus). Questions of malice, in the context of this case and at the present juncture of litigation, require a determination of motive and intent and generally present an issue to be entertained by the finder of fact. *See Thacker v. City of Hyattsville*, 135 Md. App. 268, 300-301 (2000) (speaking to issue of summary judgment ruling based on absence of malice); *see also Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 38 (2002) (claim of qualified immunity trumped by showing of malice). The issue cannot not be decided at this time when inferences drawn on the pleading must be decided in favor of Plaintiff Purnell. As such, Defendants are not entitled to a dispositive ruling on this issue.

Because malice can be inferred in this case, dismissal and/or summary judgment cannot be granted in this case. *See Lessee*, 64 Md. App. at 497 ("Actual malice does not always have to be shown with specificity; it can be inferred."); *see also Keys v. Chrysler Credit,* 303 Md. 397, 408, 494 A.2d 200 (1985) (From the lack of probable cause, a jury could infer malice).

**E. Plaintiff's independent causes of action for the false arrest, false imprisonment, and battery are also viable.**

In order to set forth a prima facie cause of action for false arrest "the plaintiff must establish that 'the defendant deprived him or her of his or her liberty without consent and without legal justification.'" *Okwa v. Harper*, 360 Md. 161, 190, 757 A.2d 118, 133 (2000). "The

elements of false imprisonment are the same as the elements for false arrest." *Green v. Brooks*, 125 Md. App. 349, 367, 725 A.2d 596, 605 (1999).  A police officer making a warrantless arrest is liable for false arrest if he acted without legal authority to arrest under the circumstances that exist on the scene. *See Green*, 725 A.2d at 596. The Maryland Court of Appeals "has consistently held that probable cause is not a defense in an action for false imprisonment based upon a police officer's warrantless arrest for the commission of a non-felony offense..." *Ashton v. Brown*, 339 Md. 70, 121-122 (1995); *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 654, 261 A.2d 731 (1973) ("probable cause is not a defense to an action for false imprisonment but legal justification is"); *Clark's Park v. Hranicka*, 246 Md. 178, 186, 227 A.2d 726, 730 (1967) ("probable cause to suspect the plaintiffs and thus detain them . . . could be considered in mitigation of damages, but not as a defense to the charge of false imprisonment"); *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 173-174, 122 A.2d 457 (1956) ("in the . . . action for false imprisonment, there must be a deprivation of the liberty of another without his consent and without legal justification. Although intent is necessary, 'malice' is not, nor is probable cause a defense"); *Mahan v. Adam*, 144 Md. 355, 365, 124 A.901, 905 (1924); *Fleisher v. Ensminger*, 140 Md. 604, 620, 118 A.153 (1902) (an unlawful detention "is false imprisonment, without regard to whether it is done with or without probable cause"). The objective lawfulness of the arrest, rather than the good faith or reasonable belief of the arresting officer, determines liability for the tort. *See Great Atl. & Pac. Tea Co. v. Paul*, supra, 256 Md. at 654, 261 A.2d at 738; *Safeway Stores, Inc. v. Barrack*, supra, 210 Md. at 173-174, 122 A.2d at 460; *Fleisher v. Ensminger*, supra, 140 Md. at 620, 118 A. at 159.

> Thus, while the presence or absence of probable cause to believe
> that a crime was committed may be pertinent in some cases with
> regard to the lawfulness of the arrest, the actual element of the tort
> of false imprisonment is legal justification rather than probable

> cause. To the extent that the lawfulness of an arrest does not turn
> upon probable cause under Maryland law, probable cause will not
> be determinative of the legal justification issue in a false
> imprisonment action based on that arrest.

*Ashton v. Brown*, supra, 339 Md. at 120.

Maryland's appellate courts have also addressed the issue of whether probable cause was established as a matter of law or whether a factual dispute warranted submission of the probable cause issue to the jury. The Court of Appeals has explained that "under conflicting evidence 'the issues as to probable cause and malice, however great the preponderance of probability may [seem] to be on the side of [the] defendant, [are] issues of fact, not law, and under our theory and system of trials their submission to the jury [is] necessary.'" *Exxon Corp v. Kelly*, 281 Md. 689, 698 (1978), (quoting *Veid v. Roberts*, 200 Ala. 576, 76 So. 934, 934 (1917)).  Accordingly, in circumstances such as those in the instant case, where the parties dispute the facts supporting probable cause, the absence of probable cause is a question for the jury. See *Montgomery Ward & Co. v. Cliser*, 267 Md. 406, 298 A.2d 16 (1972) (where store detective claimed that customer put merchandise in his pocket, but customer denied this, probable cause was a jury issue); *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 122 A.2d 457 (1956) (where security guard claimed that customer had concealed items, but customer denied this, probable cause was a jury question); *Kennedy v. Crouch*, 191 Md. 580, 62 A.2d 582 (1948) (where Crouch called Kennedy a "screwball," but Crouch contended that he had not made "loud and unseemly noises," probable cause for prosecution on disorderly conduct charge was a jury question); *Glover v. Fleming*, 36 Md. App. 381, 373 A.2d 981, cert. denied, 281 Md. 738 (1977) (where initial suspect in theft stated that he had seen Fleming steal the money, but Fleming denied this, probable cause was a jury issue). In this case the jury must decide the facts based on the differing accounts presented by the various witnesses; based on the factual

determination the jury must then decide whether the Defendant Officers had probable cause to arrest the Plaintiff.

Plaintiff Purnell contends that the defendant officers detained him and subsequently assaulted him without justification or warning.  The records support such a conclusion and the related inference that the officers elected to physically arrest Plaintiff Purnell was contrary to the laws of the State of Maryland.  *See Leese v. Baltimore County*, 64 Md. App. 442, 480, cert. denied, 305 Md. 106, (1985) (showing of malice necessary to defeat official immunity requires "an act without legal justification or excuse..."). Plaintiff's intentional tort claims are viable, because the evidence demonstrates that the Defendant Officers acted without legal justification to affect an arrest or utilize force.  *See Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 38 (2002) (claim of qualified immunity trumped by showing of malice); *see also Arrington v. Moore*, 31 Md. App. 448, 464, 358 A.2d 909, 918, cert. denied, 278 Md. 729 (1976). It has also been averred that the defendant officers acted maliciously. Questions of malice require a determination of motive and intent and generally present an issue to be entertained by the finder of fact. *See Thacker v. City of Hyattsville*, 135 Md. App. 268, 300-301 (2000) (speaking to issue of summary judgment ruling based on absence of malice) The Maryland Court of Appeals has explained that, in situations such as the instant case, inferences arising from evidence presented by an arrestee challenging a claim of qualified immunity must be drawn in favor of the arrestee. See e.g. *Okwa v. Harper*, 360 Md. 161, 757 A.2d 118 (2000) (reviewing a decision regarding a Motion for Summary).

## IV.   <u>Request for Discovery</u>

Alternatively, Plaintiff requests that this Honorable Court defer consideration of Defendants' dispositive motion until the parties have been allowed a reasonable opportunity to engage in discovery. In support of this request, Plaintiff incorporates the First Amended

Complaint filed and points to the various documents and affidavits appended to Defendants dispositive motion in response to the same. Plaintiff respectfully requests that he permitted an opportunity to address these materials through proper discovery. Attached Exhibit Number 3, Affidavit of Anton L. Iamele, Esquire.

This request for a reasonable opportunity to engage in discovery is consistent with the Federal Rules of Civil Procedure and the cases evaluating the same in matters similar to the instant case. The Fourth Circuit Court of Appeals has indicated that "[a] party <u>must</u> be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted." *Gay,* 761 F.2d at 177 (quoting *Johnson v. RAC Corp.,* 491 F.2d 510, 515 (4th Cir.1974). Moreover, Federal Rule 56 mandates an opportunity for reasonable discovery and provides in pertinent part:

> (d) When Facts Are Unavailable to the Nonmovant. If a
> nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition,
> the court may:
>   (1) defer considering the motion or deny it;
>   (2) allow time to obtain affidavits or declarations or to take
>   discovery; or
>   (3) issue any other appropriate order.

"As a general rule, summary judgment is appropriate only after 'adequate time for discovery'." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); see also *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991). "'Summary judgment must be refused where the nonmoving party has not had the opportunity to discovery information that is essential to his opposition.'" *Evans*, 80 F. 3d at 961 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n. 5 (1986)).

As noted in the undersigned's attached declaration, in the absence of discovery, Plaintiff will be denied a fair opportunity to address the issues that have been raised before this Court. *See e.g. Haley v. City of Boston*, 657 F.3d. 39, 53 (1st Cir. 2011) ("Although couched in general terms, Haley's allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery.")

**V. Conclusion**

Plaintiff's Complaint contains sufficient factual allegations to state a prima facia case for the claims asserted. Alternatively, there are genuine disputes of material fact in this case which preclude summary Judgment with respect to Plaintiff Purnell's claims of Battery, False Arrest, False Imprisonment, for the violations of her federal constitutional rights under 42 U.S.C. § 1983, and his claims for violations of Maryland Declaration of Rights. The same disputes of fact vitiate the defendants' respective claims of immunity.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____-s -_____
Anton L. Iamele, Fed Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
aiamele@iamelelaw.com
Telephone: 410-779-6160
Facsimile: 410-779-6161
*Counsel for Plaintiff*

### HEARING REQUEST

Plaintiff request that a hearing be held concerning Defendant's Motion to Dismiss and the instant Opposition to the same.

_____- s-_____
Anton L. Iamele

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **19th** day **of September 2022**, a copy of the foregoing was served electronically via ECF to the following:

Raymond R. Mulera, Esq.
7225 Parkway Drive
Hanover, MD 21076

_____-s -_____
Anton L. Iamele, Fed Bar No. 14845